MOSLANDER ET AL. *v.* BELDON.

[No. 13,227. Filed December 21, 1928.]

*Wise & Wise* and *Holman, Bernetha & Miller*, for appellants.

*Frank E. Martindale, John W. Kitch, Edward Headley* and *Walter O. Lewis,* for appellee.

McMAHAN, J.—This is an action by appellee against Charles Moslander, hereafter referred to as "appellant," and Luther R. Cressner, to compel the delivery of a deed by which appellant had conveyed certain land in Marshall county to appellee, and which had been deposited in escrow with Cressner. There was a judgment for the plaintiff, hence this appeal.

The only questions presented relate to the sufficiency of the evidence to sustain the finding of the court, and the correctness of the conclusion of law.

The controlling facts, as found by the court, are, in substance, as follows:

On April 23, 1923, appellee and his wife were the owners of 640 acres of land in North Dakota. One-half of said land was owned by appellee, and the other half was owned by his wife. Appellant owned certain land in Marshall county, Indiana. Appellant and appellee, on said day, entered into a written contract for the exchange of the Indiana land for the North Dakota land. This contract recited that appellant had sold the Indiana

land to appellee, had executed a warranty deed conveying such land to appellee, and that the deed had been placed in escrow until appellant quieted his title against a claim of Coleman Watkins, after which the deed was to be delivered to appellee, upon appellee paying appellant $173, that being the balance due appellant on a contract by which he had agreed to sell the same land to Watkins and which contract appellant had assigned to appellee. It also recited that appellee and his wife had conveyed the North Dakota land to appellant, and that that deed had also been deposited in escrow pending the suit to quiet the title to the Indiana land, and it expressly provided that, upon the said title being quieted as to Watkins, the two deeds should be delivered to the respective grantees, at which time appellee should pay appellant $1,850, that being the amount of a mortgage which appellant held on the North Dakota land for money advanced to appellee.

The court further found that, pursuant to the above contract, appellant had signed a warranty deed wherein he conveyed the Indiana land to appellee, subject to the taxes for 1922 and 1923; that appellee and his wife had, pursuant to the contract, signed a warranty deed conveying the North Dakota land to appellant, subject to the taxes for 1922 and 1923, and subject to a mortgage of $5,600, which appellant assumed; that Cressner was the scrivener who drafted said deeds; that said deeds were delivered to Cressner to be held in escrow pending the termination of the suit to quiet title; that a decree was thereafter entered in favor of appellee quieting the title to the Indiana land against Watkins, who later surrendered possession of the land. On November 19, 1924, appellee, in response to a letter from appellant's attorney, met with such attorney, and the amount to be paid appellant under the contract was determined and agreed upon, and it was then agreed that appellee should

execute and deliver to appellant a promissory note of that date for the amount so found to be due appellant, and that he execute a mortgage on the Indiana land to secure said note; that thereafter, but on the same day, such attorney and appellant and appellee met at the office of Cressner, who, at the request of appellants' attorney, drafted the note and mortgage, which after being executed by appellee were delivered to appellant in full settlement between the parties as agreed upon. This note and mortgage were made out at the direction of appellant, and appellant accepted such note and mortgage from appellee as payment of the amount due him under the contract. Immediately following the execution of such note and mortgage, appellee, at the request of appellant, executed and delivered to appellant a bill of sale for any interest appellee had to the landlord's share of the crops raised on the North Dakota land, after which appellee demanded from appellant and Cressner the deed to the Indiana land, which demand was refused.

Upon these facts, the court concluded that the deed to the Indiana land should be delivered to appellee, and rendered judgment for appellee.

Appellant's first contention is that the court erred in its conclusion of law. In support of this contention, appellant says the contract was not mutually binding, because it was not signed by Mrs. Beldon, and that specific performance could not have been enforced as to her. In support of this contention, appellant cites and relies upon *Freeland* v. *Charnley* (1881), 80 Ind. 132; *Pulse* v. *Miller* (1881), 81 Ind. 190, and *Luzader* v. *Richmond* (1891), 128 Ind. 344, 27 N. E. 736. None of these cases is in point. In the first case, Freeland wrote a letter proposing to buy certain real estate at a designated price. This letter was written to the husband, and agent of the owner, who was a married woman. The agent accepted the proposition, after which the owner and her husband

signed and acknowledged a deed naming Freeland as the grantee, and sent the deed to their agent, with instructions to deliver it to Freeland upon payment of the agreed price. With knowledge of these facts, Charnley purchased the property and caused the destruction of the deed to Freeland, after which the latter tendered the agreed price to Charnley and demanded a deed. There was no escrow agreement involved in the case. The party to whom the deed had been sent was the agent of the owner of the land. There was no agreement between the vendor and the vendee that the deed should be placed in the custody of a third party to be delivered to the vendee upon the payment of the purchase money. In *Pulse* v. *Miller, supra,* the contract failed to describe the property and for that reason was held to be within the statute of frauds. No question as to the effect of a delivery in escrow and a full performance by the vendee was involved. The facts in the Luzader case were similar to the facts in the Freeland case. No escrow agreement was there involved. The cases cited were correctly decided under the well-established rule that a deed cannot be delivered in escrow to the agent of the grantor, because the possession of the agent is the possession of the grantor. See *Ashford* v. *Prewitt* (1893), 102 Ala. 264, 14 So. 663, 48 Am. St. 37; *Van Valkenburg* v. *Allen* (1910), 111 Minn. 333, 128 N. E. 1092, 137 Am. St. 561.

One of the oldest, yet one of the best, definitions of an escrow is found in Sheppard, Touchstone p. 58, where the author says: "The delivery of a deed as an escrow is said to be when one doth make and seal a deed and deliver it unto a stranger, until certain conditions be performed, and then to be delivered to him to whom the deed is made, to take effect as his deed. And so a man may deliver a deed, and such deed is good. But in this case, two conditions must be heeded; first, that the form of the words used in the delivery of a deed

in this manner be apt and proper; second, that the deed be delivered to one that is a stranger to it, and not to the party himself to whom it is made."

In discussing the delivery to the depositary and the irrevocability of such delivery, the law is stated in 10 R. C. L. §8, p. 626, as follows: "Where the possession of the depositary is subject to the control of the depositor, an instrument cannot be said to be delivered, and it is not an escrow. While as will be seen, the depositor's right of possession may return if the specified event does not happen, or the conditions imposed are not performed, yet to constitute an instrument an escrow it is essential that the deposit of it should be in the meantime irrevocable; that is, that when the instrument is placed in the hands of the depositary, it should be intended to pass beyond the control of the depositor, and that he should actually part with all present or temporary right of possession and control over it. In case the deposit is made in furtherance of a contract between the parties, the contract must be so nearly complete that it remains only for the grantee or obligee or another person to perform the required conditions, *or for the event to happen,* to have the instrument take effect according to its import." (Our italics.)

"The depositary of an escrow is sometimes spoken of as the agent of the grantor and sometimes as the agent of both parties, and whilst that may be correct, in a limited sense, yet, strictly speaking, he is not an agent at all; he is a trustee of an express trust, with duties to perform for each which neither can forbid without the consent of the other." *Seibel* v. *Higham* (1909), 216 Mo. 121, 115 S. W. 987, 129 L. R. A. 502.

"An escrow executed and deposited upon a valuable consideration is not revocable, by the depositor, except according to the terms of the agreement and deposit, and the depositary, being as much

the agent of the grantee as of the grantor, is as much bound to deliver the deed, on performance of the conditions, or happening of the event stipulated, as he is to withhold it until such performance or happening. Furthermore, such delivery may be compelled by the party entitled to the instrument." 10 R. C. L. §15, p. 633. See authorities there cited.

It has been frequently held that a deed in escrow conveys no title until it is delivered. But it does not necessarily follow that the grantee named in such deed has no interest in the land. Thus, in *Burkam* v. *Burk* (1884), 96 Ind. 270, 273, the court speaking of the interest of the grantee in a deed in escrow said: "By her purchase she became the owner, and while she was not invested with the legal title, she was with an equitable estate, and this was the subject of mortgage."

This court, in *Farmers Mutual Fire Ins. Co.* v. *Olson* (1920), 74 Ind. App. 449, 127 N. E. 848, in discussing the time when a deed in escrow becomes effective and the effect of full performance of the conditions required of the grantee to entitle him to a delivery, committed itself to the rule as stated in 10 R. C. L. §20, p. 640, where it is said: "Some courts hold that an escrow does not take effect as a fully executed deed until there has been a rightful delivery to the grantee; but the more logical position, and that approved by numerous authorities, is that upon the happening of the event or the performance of the condition upon which manual delivery should be made by the depositary to the grantee, although not in fact physically delivered to him, a deed theretofore in escrow becomes *ipso facto* the deed of the grantee in whom the title vests, and that thenceforth the depositary or holder is regarded as the mere agent or trustee of the grantee."

In *Val Verde Hotel Co.* v. *Ross* (1924), 30 N. M. 270,

231 Pac. 702, where a deed had been placed in escrow pending the completion of a hotel, and where the condition of the escrow had been performed, the court said: "It therefore appears that long prior to the bringing of the action, plaintiff was entitled to the delivery of the deed by the escrow holder. The deed belonged to the plaintiff, and the grantor no longer had any power or control over the same. Under such circumstances, the delivery of the deed was complete, and title vested in the grantee, notwithstanding the manual delivery of the paper had not been made."

"The deed being . . . delivered as an escrow, it is no longer *revocable by the vendor*, but will take effect whenever the condition has happened or been complied with on which it is to be delivered." *Cannon* v. *Handley* (1887), 72 Cal. 133, 13 Pac. 315. To same effect, see *Wilkins* v. *Somerville* (1907), 80 Vt. 48, 66 Atl. 893, 11 L. R. A. (N. S.) 1183, 130 Am. St. 908, and note at page 965; *First Nat. Bank* v. *Callahan Min. Co.* (1916), 28 Idaho 627, 638, 155 Pac. 673; *Millett* v. *Parker* (1859), 2 Metc. (Ky.) 608, 616; *Shirley* v. *Ayres* (1846), 14 Ohio 307, 45 Am. Dec. 546.

While it has frequently been stated by the authorities that a deed placed in escrow does not vest title until the condition has been performed and the deed has been delivered to the grantee, the better view is, that upon the happening of the condition upon which manual delivery should be made, a deed theretofore in escrow becomes *ipso facto*, the deed of the grantee, and that thenceforth the depositary or holder is regarded as the mere agent or trustee of the grantee. *White Star Line Steamboat Co.* v. *Moragne* (1890), 91 Ala. 610, 8 So. 867; *Couch* v. *Meeker* (1817), 2 Conn. 302, 7 Am. Dec. 274; *Price* v. *Pittsburgh, etc., R. Co.* (1864), 34 Ill. 13; *Jackson* v. *Rowley* (1893), 88 Iowa 184, 55 N. W. 339; *Taylor* v. *Thomas* (1874), 13 Kans. 217; *Chase* v. *Gates* (1851),

33 Me. 363; *Francis* v. *Francis* (1906), 143 Mich. 300, 106 N. W. 864; *Naylor* v. *Stene* (1905), 96 Minn. 57, 104 N. W. 685; *Hall* v. *Harris* (1848), 40 N. C. 303; *Craddock* v. *Barnes* (1906), 142 N. C. 89, 54 S. E. 1003; *May* v. *Emerson* (1908), 52 Ore. 262, 96 Pac. 454, 16 Ann. Cas. 1129; *Ketterson* v. *Inscho* (1909), 55 Tex. Civ. App. 150, 118 S. W. 626; *Tanner* v. *Imle* (1923), 253 S. W. (Tex. Civ. App.) 665; *Foxley* v. *Rick* (1909), 35 Utah 162, 99 Pac. 666; *Prutsman* v. *Baker* (1872), 30 Wis. 644, 11 Am. Rep. 592; *Gardiner* v. *Gardiner* (1923), 36 Idaho 664, 214 Pac. 219; *Bishop* v. *Dodge* (1917), 196 Mich. 231, 162 N. W. 1002; *Gammon* v. *Bunnell* (1900), 22 Utah 421, 64 Pac. 958; 1 Devlin, Deeds (2d ed.) §331.

Referring to the facts in the instant case, the condition entitling the depositary to deliver the deed had been performed. Appellant was entitled to have the deed for the North Dakota land delivered to him, and appellee was entitled to have the deed to the Indiana land delivered to him. The grantee in each of said deeds, after a demand and refusal of the depositary to deliver his deed, could maintain an action against the depositary to compel such delivery, without making the grantor in the deed a party defendant. Moslander was not a necessary party in the instant case. It was the duty of Cressner to have complied with appellee's demand, and to have delivered the deed to the Indiana land to appellee. This being true, the court did not err in its conclusion of law.

Referring to the contention that the finding is not sustained by sufficient evidence, appellant makes no claim that the facts set out in the finding are not fully sustained by the evidence. His contention upon this branch of the case is thus stated in his brief: "The findings of the court and the conclusions of law were in plain defiant opposition to all the evidence and the law as applied to the facts. The judgment was in

plain opposition to the evidence and the law as well as the special findings of facts. All the facts within the issues that were established by the evidence should have been, but were not, found by the court. Therefore, the motion for new trial should have been sustained." Our attention has not been called to any fact within the issues, on-which there was any evidence, that is omitted from the finding. And we hold that no error has been shown in the action of the court in overruling the motion for a new trial.

Judgment affirmed.