### In re the MARRIAGE OF Jay B. GLENDENNING, Appellant–Respondent,

#### and

### Angela D. (Glendenning) Martel, Appellee–Petitioner.

#### No. 34A02–9705–CV–260.

Court of Appeals of Indiana.

Aug. 29, 1997.

Jeffrey M. Miller, Noel & Noel, Kokoo, for Appellant–Respondent.

Sally A. Sager, Kokomo, for Appellee–Petitioner.

## OPINION

ROBERTSON, Judge.

Jay B. Glendenning [Father] appeals the trial court's determination, after a trial before the bench, that Father would receive no credit against his child support arrearage for funds which had been held in trust for both parties by the late David H. Williams, the former attorney of Angela D. Martel [Mother]. Father also asserts that the trial court erred by finding him in contempt for his failure to pay child support as ordered. We affirm.

### FACTS

The operative facts are not disputed. Father and Mother divorced in 1991. In the Decree, the trial court ordered that the marital residence be sold and the proceeds be applied to pay certain debts. The remainder was to be divided equally between the parties, with $2,500.00 of Father's share to be paid to Mother's first attorney, Stephen M. Jessup. At the time of the divorce in 1991, the property appraised for $18,900.00.

However, as will be discussed below, the house did not sell until 1995. Over the intervening years, Father invested materials and labor in improvements to the house to make

it more marketable and valuable. On April 18, 1994, the parties filed a stipulation in the trial court to the effect that Father had accumulated a child support arrearage in the amount of $24,310.00, and that Father's arrearage would be paid from his share of the proceeds of the sale of the house.

In 1995, the house sold for a purchase price of $40,000.00. After payment of the debts and other expenses (except the $2,500.00 owed to Mother's former attorney), the sale netted the parties $31,049.90. Thus, under the division set out in the Decree, Mother would have received ½ of this amount, $15,524.95, Father would have received $13,024.95 ($15,524.95 − $2,500.00), and Mother's attorney, Stephen M. Jessup, would have been paid $2,500.00. Thus, under the formula set out in the Decree, Father's share would not satisfy his child support arrearage.

However, at closing, Father contested this distribution, and demanded that he be reimbursed and/or compensated for the expenditures and improvements that he had made relative to the house. This dispute could not be resolved at closing. Jessup was paid $2,500.00 of the sale proceeds. The title company which facilitated the closing cut a check payable to both Father and Mother for the remaining $28,549.90 ($31,049.90 − $2,500.00). The parties agreed that Mother's then attorney, David H. Williams, would "hold" the money until the dispute was resolved because, although the precise allocation was disputed, it was clear that Mother would receive most of the proceeds due to the substantial arrearage. Mother and Father endorsed the check. Williams also endorsed the check, signing "David H. Williams, Trustee." At some point, the language "AND DAVID H. WILLIAMS, TRUSTEE" was typed on the front of the check as an additional payee. The check was paid to Williams.

The parties' attempt to resolve the dispute without litigation failed. On May 22, 1995, Williams petitioned the trial court to hold a hearing to determine the proper allocation of the proceeds between the parties.

However, on June 5, 1995, Williams committed suicide. The $28,549.90 Williams was holding for the parties has never been found or accounted for. Apparently, Williams had converted or embezzled the money for his own use.[1]

On March 5, 1997, Mother filed the instant petition requesting that Father be held in contempt for failing to pay child support. The matter was tried before the bench. The trial court found that Father was not entitled to any credit against his child support arrearage for monies held and converted by Williams. Thus, the trial court found Father in contempt for his failure to pay the child support arrearage. This appeal ensued. Additional facts are supplied as necessary.

### DECISION

■ On appeal of a bench decision, the appellate court will not set aside the judgment unless it is clearly erroneous. Ind.Trial Rule 52(A). When the trial court enters findings on its own motion (as in the present case), specific findings control only as to issues they cover while a general judgment standard applies to any issue upon which the court has not found. *Matter of Estate of Burmeister*, 621 N.E.2d 647, 649 (Ind.Ct.App.1993). The reviewing court will affirm if the judgment can be sustained on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App.1993), *trans. denied.*

■ Father asserts that Mother should be charged with Williams' conversion of the sale proceeds because Williams had been her attorney. Father points out that Williams had been chosen to hold the money, despite the dispute over the precise allocation between the parties, because it had been clear that Mother would be entitled to most of the proceeds due to the agreement regarding the arrearage. Father argues that, because the parties had stipulated that Father's child-support arrearage would be paid out of the proceeds, his obligation to pay the arrearage was satisfied when Mother's attorney took

1. The record indicates that Mother is pursuing compensation from Williams' estate. Mother suggests that Father could also seek compensation from the estate. Additionally, the parties could apply for compensation from the Client's Financial Assistance Fund administered by the Indiana State Bar Association.

possession of the money. Accordingly, Father reasons, the trial court erred by not giving him credit against his child support obligation for his share of the funds converted by Williams. We disagree.

This appears to be an issue of first impression in Indiana. However, our hornbooks have served us well. As stated in 30A C.J.S. *Escrows* §§ 9–10 (1992):

> It is the general rule that an instrument cannot be deposited as an escrow with the agent or attorney of the grantee or other party who is to have the benefit of the instrument ... since such a deposit is equivalent to a delivery directly to the grantee.

> However, an agent of the grantee is not necessarily incapacitated by force of his agency from acting as the depositary of an escrow, and he may become such depositary where under the circumstances of the case, to do so involves no violation of duty as agent of the grantee, or where he acts as an individual and not as agent....

> The intention of the parties, at the time of the deposit with the escrow agent, is controlling as to whether he is acting as an individual or in his capacity as attorney for one of the parties....

> On consummation of the contract and deposit, the escrow holder is generally considered the agent of both parties to the escrow, and he owes an obligation to each party measured by an application of the ordinary principles of agency....

> *The escrow holder has also been denominated a trustee for the parties, charged with the performance of an express trust governed by the escrow agreement,* ... Otherwise expressed, one assuming to act as a depositary in escrow occupies a fiduciary relationship to each of the parties ...

> When the condition on which the instrument is to take effect is performed, the nature of the dual agency changes and the depositary or escrow holder becomes a mere agent or trustee for each party with respect to the things in escrow to which each has thus become completely entitled, and his possession is equivalent to possession by such party.

*Id.* at pp. 507–509 (Emphasis added). Moreover, as stated in 28 Am.Jur.2d *Escrow* § 20 (1966):

As a general rule, a loss occasioned by the default, peculation, or similar wrong of an escrow holder, must, as between the parties to the escrow transaction, be borne by the one who, at the time of its occurrence, was lawfully entitled to the right or property affected, and this is true irrespective of which party selected the escrow agent. Ordinarily, the question as to who is entitled to the right or property affected depends upon a determination whether there has been timely satisfaction of the condition of the escrow prior to the loss, or a determination of whose agent the escrow holder is at the time of the loss, applying the equitable principle that where one of two innocent persons must suffer from the wrongful act of a third, the loss should be born by him who put the wrongdoer in a position of trust and confidence and thus enable him to perpetuate the wrong. Thus, in determining upon whom the loss falls when the escrow agent of a deposit of moneys fails or embezzles such moneys, it has been held that title to the moneys depends on whether the condition under which the moneys had been deposited has been performed or not.

*Id.* at 29. For example, where buyer deposits earnest money with a broker who then embezzles the money, the determining factor as to whether the loss falls upon the buyer or the seller is not that the broker had originally been the agent of the seller at the time the escrow arrangement was entered into, but rather who had title to the money at the time the broker absconded with it. *Van Dyke v. Lauer*, 9 Wis.2d 141, 100 N.W.2d 335, 337 (1960). Thus, if the broker absconds with the money before the sellers accept the buyer's offer, the loss falls upon the buyer as he would still have had title to the money. 100 N.W.2d at 338. Where buyers made a deposit of earnest money in escrow with an agent with the direction that the money was to be paid to the sellers when certain conditions had been performed, and all those conditions had been performed at the time the escrow agent embezzled the money, the escrow agent held the money as the agent for the sellers at that time; and thus, the loss fell upon the sellers. *Lechner v. Halling*, 35

Wash.2d 903, 216 P.2d 179, 183–84 (1950); *See · generally,* Warren, H.D., Annotation, *Who must bear loss resulting from defaults or peculations of escrow holder,* 15 A.L.R.2d 870 (1951).

In the present case, the evidence leads unerringly to the conclusion that Williams was to hold the proceeds from the sale of the marital residence in escrow (or in trust) as the agent or fiduciary of both Father and Mother until the dispute regarding the proper allocation of the proceeds between the parties could be resolved, at which time Williams was to pay each party his or her respective shares. Just before his death, Williams filed a motion requesting that the trial court hold a hearing to resolve the matter. Thus, at the time the money disappeared, the dispute had not been resolved. In fact, the dispute has yet to be resolved. Thus, Williams, at the time of the conversion, was still serving in the dual capacity as agent or fiduciary for both parties with respect to the money held in escrow or trust. Accordingly, the trial court correctly determined that no amount of the proceeds had yet passed to either party under the escrow agreement and, no amount of that money had been paid to Mother to reduce Father's child support arrearage. Therefore, the trial court correctly concluded that Father was entitled to no credit against his child support arrearage, and we find no error.

## I.

### Willful Disobedience

Father asserts that, even if he were not entitled to any credit against the arrearage for the money embezzled by Williams, the trial court erred in holding him in contempt because his failure to pay his arrearage had not been the product of willful disobedience. Father points out that the parties had stipulated that the arrearage would be paid out of his share of the sale proceeds and, thus, Father's failure to pay the arrearage was the result of Williams' malfeasance and not Father's willful disobedience.

■ The trial court must find "willful disobedience" to hold a party in contempt for violation of court orders. *Nicholas v. Nich-*

*olas,* 482 N.E.2d 770, 771 (Ind.Ct.App.1985). In reviewing the sufficiency of the evidence supporting a trial court's finding that a party was in contempt for disobeying its order, we will not reweigh the · evidence or reassess witness credibility. *Connell v. Connell,* 583 N.E.2d 791, 792 (Ind.Ct.App.1991). Our review is limited to ,considering the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. *Id.* Unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed. *Id.*

■ We are sympathetic to Father's plight and argument. Nevertheless, the trial court did not err in holding Father in contempt because the evidence supports the conclusion that Father's argument, that he was entitled to any portion of the sale proceeds, was unreasonable. The essence of Father's argument, as set out in his offer to prove his entitlement to a larger share of the proceeds, was that he was entitled to be compensated for his contributions to the house which had increased its value from its appraised value in 1991 of $18,900.00 to its eventual sale price of $40,000.00—an increase in value of $21,-100.00 ($40,000.00 − $18,900.00).[2] If this $21,100.00 amount were to be taken off the top and set aside to Father, the computation of the parties' respective shares of the net proceeds would be as follows:

|  |  |  |
|---|---|---|
| | $31,049.90 | (representing the net proceeds including the $2,500.00 to be paid to Mother's first attorney as discussed in FACTS section) |
| less | $21,100.00 | (representing Father's share taken off the top for his contributions) |
| = | $ 9,949.90 | (amount remaining to be distributed between the parties) |

$ 9,949.90/2 = $4,974.95 (Mother's 50% share)

|  |  |  |
|---|---|---|
| | $ 4,974.95 | ($9,949.90/2) |
| less | $ 2,500.00 | (Attorney Jessup's fee paid from Father's share) |
| = | $ 2,474.95 | (Father's share of remaining proceeds) |

|  |  |  |
|---|---|---|
| | $21,100.00 | (Father's share off top as computed above) |
| plus | $ 2,474.95 | (Father's share of remaining proceeds) |
| = | $23,574.95 | (Father's total share of net proceeds) |

2. Nothing in this decision should be interpreted as an expression of our opinion regarding the merits of Father's argument that he was entitled to a greater share of the sale proceeds.

As noted above, the order that Father's arrearage would be paid out of the sale proceeds also stipulated that Father had accumulated an arrearage in excess of $24,000.00. Thus, even if Father could have proved his entitlement to be credited for the entire $21,100.00 increase in the value of the house, his total share of the net proceeds would still not satisfy the arrearage. The trial court could have determined that Father's refusal to negotiate the check at closing in Mother's favor enabling her (and the children) to the benefit of the proceeds, which caused the money to be placed in escrow until the dispute could be resolved, was unreasonable and, thus, tantamount to the willful disobedience of its order to pay child support. Therefore, the trial court did not err in holding Father in contempt.

Judgment affirmed.

BAKER and NAJAM, JJ., concur.