**MERIDIAN TITLE CORPORATION, an Indiana Corporation, Appellant–Defendant,**

**v.**

**PILGRIM FINANCING, LLC, an Indiana Limited Liability Company, Appellee–Plaintiff.**

No. 45A05–1010–CC–613.

Court of Appeals of Indiana.

April 28, 2011.

James P. Knepp, Andrea Kurek Slagh, Hahn, Walz and Knepp, South Bend, IN, Attorneys for Appellant.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Kevin W. Marshall, Hobart, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Meridian Title Corporation (Meridian), appeals the trial court's judgment in favor of Appellee–Plaintiff, Pilgrim Financing, LLC (Pilgrim), with respect to Pilgrim's claim that Meridian negligently disbursed the net proceeds from a refinancing transaction.

We affirm.

*ISSUE*

Meridian raises one issue on appeal, which we restate as follows: Whether the trial court erred when it found that Meridian negligently disbursed the net closing proceeds from a refinancing transaction.

*FACTS AND PROCEDURAL HISTORY*

Pilgrim is a limited liability company whose chief executive officer is Jonathan Petersen (Petersen). Kerusso Konstruction Kompany (Kerusso) is a limited liability company that buys and sells real estate. On November 22, 2005, Kerusso and one of its members, Sergio Garcia (Garcia), executed a contemporaneous and after acquired property mortgage (CAAP mortgage) with Pilgrim in the amount of $123,987.83. At that point in time, Kerusso and Garcia owed Pilgrim over half a million dollars, and Pilgrim intended the CAAP mortgage to provide additional security for the debt. On or about February 7, 2006, Garcia and Kerusso also executed a second CAAP mortgage with Pilgrim in the amount of $200,000. These CAAP mortgages both state that:

All of the mortgagors' rights, title, interest, privileges and franchises in and to all other property, real, personal or mixed, of every kind and description and wheresoever situated, now owned *or which may be hereafter acquired* by [Garcia and Kerusso] ... shall be fully embraced within and *subjected to a lien* hereof as if such property were specifically described herein....

(Appellant's App. pp. 35 and 39) (emphasis added). Pilgrim recorded both of the CAAP mortgages on October 13, 2006.

Meridian, a title insurance company that serves as a settlement and closing agent

for real estate transactions involving real property, first learned of the CAAP mortgages in October of 2006 when Petersen faxed Meridian copies of the mortgages. Upon receiving Petersen's fax, Meridian's title and legal representatives reviewed the CAAP mortgages and instructed the closing agents at Meridian responsible for Garcia and Kerusso's transactions, Norma Richardson (Richardson) and Kim Diaz (Diaz), to treat the CAAP mortgages the same as they would treat any other mortgage. Accordingly, any time that Kerusso and Garcia wanted to engage in "any type of a real estate transaction," Richardson and Diaz were to interpret the CAAP mortgages as "lien[s] against the property" and request a payoff and partial release of mortgage from Pilgrim before the close of the transaction. (Transcript pp. 70–71).

In addition to faxing Meridian the mortgages, Petersen also talked to Richardson and Diaz on the phone and told them that he was having "problems" with Kerusso and Garcia. (Tr. p. 21). Petersen agreed to provide a payoff letter and release of mortgage whenever Meridian requested them in order to allow Garcia and Kerusso to continue to do business, but he told Richardson and Diaz that he wanted "all of the money coming out of any of [the] transactions," and that he needed Richardson and Diaz to inform him of the situation otherwise. (Tr. p. 21). Thereafter, whenever Garcia and Kerusso initiated a transaction implicating the CAAP mortgages, Richardson and Diaz would request a payoff and partial release of mortgage from Pilgrim. Petersen would fax Meridian both documents, but would not provide the original partial release of mortgage until after receiving payment from Meridian for the transaction, or notice from Meridian that there were not any proceeds from the transaction. Without an original partial

release of mortgage, Meridian could not record the release of mortgage.

On November 13, 2006, Garcia and Kerusso engaged in two transactions—a purchase of property on Northcote Avenue in East Chicago, Indiana (Northcote Property), and a refinance of that property the same day. Meridian served as the title insurance and closing agent for the refinance transaction of the property whereas another title company served as the agent for the purchase of the property. Prior to the closings on the property, Richardson told Petersen about the transactions and requested a payoff and partial release of the CAAP mortgages. In response, Petersen faxed both documents to Meridian before the closing date. In the payoff letter he sent to Meridian, Petersen stated:

> For issuance of a release of mortgage for the [Northcote Property], please remit all funds after payment of the purchase money mortgage, the real estate taxes and reasonable closing costs.... Once you have collected and forwarded to us the consideration for the same, we will forward to you an executed release.

(Exh. Vol. 2, Plaintiff's Exh. 3).

Kerusso and Garcia closed on the purchase of the Northcote Property for a net purchase price of $37,982.96 and sent the settlement statement to Meridian. That same day, Kerusso and Garcia also closed on a refinance of the Northcote Property with Meridian. Kerusso and Garcia advised Meridian that the loan amount for the refinance was $38,250.00 and that the net proceeds were $32,994.60 after closing costs. Meridian then shared the net closing figures from both the purchase transaction and the refinance transaction with Petersen. After speaking with Petersen, Richardson noted in Meridian's file that Petersen had advised her that Pilgrim would not require any funds from the

Northcote transaction. As a result, Meridian released the proceeds of $32,994.60 to Garcia and Kerusso instead of Pilgrim.

After his conversation with Richardson, Petersen delivered the original partial release of mortgage to Meridian, and Meridian recorded the original partial release of mortgage. Subsequently, Petersen discovered through a foreclosure litigation action against Garcia that Garcia and Kerusso had received proceeds from the purchase and refinance of the Northcote Property.

On March 2, 2009, Pilgrim filed a complaint against Meridian, alleging (1) conversion; (2) breach of contract; (3) promissory estoppel; (4) fraud or constructive fraud; and (5) negligent failure to transmit closing proceeds balance. On May 5, 2009, Meridian filed an answer, statement of affirmative defenses, and counter-claim against Pilgrim, arguing that Pilgrim's claims were frivolous, unreasonable and groundless because Pilgrim had advised Meridian that it was not to receive any sale proceeds from the purchase of the Northcote Property. On August 27, 2010, a bench trial was held. The trial court took the matter under advisement and, on September 15, 2010, entered an Order setting forth findings of fact and conclusions of law. In its Order, the trial court held that Meridian had not committed conversion, breach of contract, fraud or constructive fraud, but determined that Meridian had negligently failed to transmit Pilgrim's closing proceeds balance. The trial court also entered a judgment in favor of Pilgrim in the amount of $32,994.60.

Meridian now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

On appeal, Meridian argues that the trial court erred in determining that Meridian negligently disbursed the proceeds from the Northcote Property to Pilgrim. Because the trial court entered special findings of fact and law, we apply a two-tiered standard of review. *Schrader v. Porter Cnty. Drainage Bd.*, 880 N.E.2d 304, 307 (Ind.Ct.App.2008). First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous and a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Moreover, in reviewing the trial court's findings, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* Instead, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Id.*

Here, the findings were made *sua sponte* by the trial court and were not requested by either party. In such instances, we review anything not covered by the findings as a general judgment, and we will affirm if we can sustain the general judgment entered with findings on any legal theory supported by the evidence. *Tew v. Tew*, 924 N.E.2d 1262, 1264–65 (Ind.Ct.App.2010).

### II. *Negligence*

To prevail on a claim of negligence, a plaintiff must prove three elements: (1) a duty owed to the plaintiff; (2) a breach of that duty by the defendant; and (3) the breach proximately caused the plaintiff's damages. *Rider v. McCamment*, 938 N.E.2d 262, 266 (Ind.Ct.App.2010). First, the parties dispute whether Meridian owed Pilgrim a duty sufficient to support a judgment of negligence. Meridian also alleges that the trial court erred in its special findings as they relate to the breach component of negligence. We will address Meridian's arguments in two separate sec-

tions regarding the duty component of negligence and breach, but we will not address proximate cause as neither party disputes that Meridian's actions proximately caused harm to Pilgrim.

## A. *Duty*

■ In regards to duty, Meridian argues that it did not have a relationship with Pilgrim that would serve to impose a duty of care on Meridian. In response, Pilgrim claims that Meridian owed it a duty because the partial release was "delivered by what amount[ed] to an escrow to Meridian" or, alternatively, because Meridian assumed a duty to Pilgrim gratuitously. (Appellee's Br. p. 8). Meridian counters that it could not have assumed a duty in escrow because there was neither an escrow agreement between Meridian and Pilgrim nor payment of an escrow fee. First, we will address the issue of whether Meridian held the partial release and the proceeds in escrow, and then we will address the issue of whether an escrow arrangement creates a duty between the parties to the escrow.

*Yost,* one of our early cases regarding escrows, defines an escrow as

> [a] written instrument which by its terms imports a legal obligation, and which is deposited by the grantor, promisor, or obligor, or his agent, with a stranger or third party, to be kept by the depository until the performance of a condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee.

*Yost v. Miller,* 74 Ind.App. 673, 129 N.E. 487, 488 (1921). The issue of whether it is possible to create an escrow absent an escrow agreement or fee is an issue of first impression in Indiana. In fact, there is very little jurisprudence in Indiana regarding the standards for escrows in general. It is apparent from the factual circumstances of multiple cases, though, that neither an escrow agreement nor a fee is necessary to create an escrow.

In *Freeland,* Freeland wrote Mary M. Gray (Gray) requesting to buy property that she owned and offering to pay the price named upon the delivery of a proper abstract and sufficient deed. *Freeland v. Charnley,* 80 Ind. 132, *1 (Ind.1881). Her agent answered and accepted Freeland's offer. *Id.* Subsequently, Gray signed and acknowledged a deed naming Freeland as grantee and sent it to Theodore Gavin (Gavin) along with instructions to deliver it to Freeland upon payment of the agreed price. *Id.* Before Freeland paid the agreed price, though, Mitchell Charnley (Charnley) asked Gray to telegraph Gavin not to deliver the deed, bought the property himself, and destroyed the deed to Freeland. *Id.* Once Freeland discovered what Charnley had done, he gave Charnley the agreed price for the property and demanded a deed. *Id.*

On appeal to the Indiana Supreme Court, Charnley argued that the deed to Freeland was in escrow with Gavin and was not valid because it was never delivered. *See id.* at *2. In analyzing the facts in *Freeland,* the supreme court cites a rule that "[i]f the delivery depends upon the performance of a *condition,* it is an *escrow.*" *Id.* at *3 (emphasis in original). Ultimately, the supreme court determined that "[w]hen a deed has been delivered as an [escrow], it has no effect, as a deed, until the condition has been performed, and no estate passes until the second delivery...." *Id.* While *Freeland* does not directly address whether an escrow agreement is necessary to create an escrow, it is important to note that there was no evidence of an escrow agreement or fee in *Freeland. See id.; see also Moslander v. Beldon,* 88 Ind.App. 411, 164 N.E. 277, 279 (1928) (stating that there was not an escrow agreement in *Freeland* ). Based on

Gray's agreement with Freeland concerning the land, she deposited the deed to Gavin with instructions necessary for delivery, and, in our supreme court's opinion, that was sufficient to establish an escrow. *See id.*

Similarly, there was no evidence of an escrow agreement or fee in *Yost.* In *Yost,* William H. Yost (Yost) duly executed a deed to his son Charles O. Yost (Charles), naming Charles as grantee. *Yost,* 129 N.E. at 488. Yost then placed the deed in an envelope and placed on the back the following instructions: "The within warranty deed from William H. Yost is hereby delivered to Macy, Nichols, and Bales, to be held by them and delivered to the grantee therein. ..." *Id.* Based on these facts, this court determined that Yost had properly established an escrow.

As evidenced by the above cases, Indiana has not traditionally required an escrow agreement or fee to establish an escrow, and we do not see a reason to adopt such a requirement here; nor has Meridian advanced any reason.

Instead, based on this precedential line of cases, we conclude that there is sufficient evidence in the record to establish that Meridian held Pilgrim's payoff letter and partial release in escrow. The payoff letter constituted a written instrument that provided the instructions to the escrow in its terms, and it was held by Meridian until the performance of the condition that Pilgrim received proceeds from the transaction or notification that there were not proceeds. Meridian argues that Pilgrim's payoff letter and partial release did not establish an escrow because they were not held by Meridian "with the proviso that [they] would be held until a condition was met or a certain event occurred." (Appellant's Reply Br. p. 3). However, the payoff letter and partial release in the instant case served as security to Meridian

that Pilgrim would provide the original release of mortgage upon satisfaction of the conditions in the letter. As a result, the condition for the delivery of the original partial release of mortgage was Meridian's fulfillment of the terms of the letter. Meridian did not dispute that its condition for receiving the original partial release was consultation with Pilgrim regarding the disbursement of the proceeds, and, accordingly, consulted Pilgrim during every transaction.

■ Next, we also conclude that parties to an escrow bear a duty towards one another to act with due care. We have previously determined that one who assumes "to act as a depositary in escrow occupies a fiduciary relationship to each of the parties." *In re Marriage of Glendenning,* 684 N.E.2d 1175, 1178 (Ind.Ct.App. 1997). Other jurisdictions, which we find persuasive and adopt in this case, have held that an escrow or closing agent's fiduciary duties include the responsibilities to comply with the instructions of the principals and to exercise ordinary skill and diligence. *See, e.g., Webster v. USLife Title Co.,* 123 Ariz. 130, 598 P.2d 108 (Ariz. Ct.App.1979); *Kirk Corp. v. First Am. Title Co.,* 220 Cal.App.3d 785, 270 Cal.Rptr. 24 (1990).

In its argument, Meridian asserts that it could not owe a duty to Pilgrim as a closing agent when it also owed a duty to Garcia and Kerusso. We do not agree with Meridian's assertions, though, because we have previously held that

> the escrow holder is generally considered the agent of both parties to the escrow, and he owes an obligation to each party measured by an application of the ordinary principles of agency. ... When the condition on which the instrument is to take effect is performed, the nature of the dual agency changes and the depositary or escrow

holder becomes a mere agent or trustee for each party with respect to the things in escrow for which each has thus become entitled. . . .

*In re Marriage of Glendenning,* 684 N.E.2d at 1178. Thus, it is possible for an escrow holder to be an agent of two parties at once. *See id.*

### B. *Breach of Duty*

■ In regards to its breach of duty, Meridian argues that the trial court's special findings are inconsistent. Specifically, Meridian points to Finding 25, which states that:

> After receiving the Settlement Statement from the purchase transaction, [Meridian] advised Petersen as to a net closing figure from Garcia [and] Kerusso's purchase transaction and the refinance transaction to be closed by [Meridian].

(Appellant's App. p. 32). In Finding 26, then, the trial court concludes that:

> Prior to the closing on the Northcote Real Estate refinance, Petersen advised Richardson that [Pilgrim] would release the lien on the Northcote [Property] without receiving any funds from the transaction, *but [Pilgrim] would not have done the same with the total knowledge of the said transaction.*

(Appellant's App. p. 32) (emphasis added). Pilgrim asks in its brief, "[W]hat additional knowledge and/or information did Pilgrim need? As the court recognized, Meridian provided Pilgrim with the net closing figures from both the purchase transaction and the refinance." (Appellant's Br. p. 9).

On review, we do not agree that the trial court's findings are inconsistent. Instead, it is apparent from the record that even though Meridian notified Pilgrim of the closing figures, as the trial court found in Finding 25, Meridian did not provide Pilgrim with all of the information necessary to make an informed decision regarding the proceeds from the Northcote Property. Namely, Meridian did not adequately explain to Pilgrim the nature of the closing and refinance transactions. Without understanding the nature of the transactions, it is not necessarily true that providing Pilgrim with the net closing figures from the transactions would have sufficiently notified Pilgrim that Garcia and Kerusso would be receiving proceeds from the transactions.

In support of this conclusion, Petersen's payoff letter and testimony at trial indicate that he was confused about the nature of the transactions. Petersen's payoff letter stated: "For issuance of a release of mortgage for the [Northcote Property], please remit all funds after payment of the *purchase money mortgage.*" (Exh. Vol. 2, Plaintiff's Exh. 3) (emphasis added). From this language, it is apparent that Petersen thought that the purchase transaction included a purchase money mortgage. Under that understanding, even if the refinance figure was less than the figure for the purchase price, the proceeds would be given to the seller to pay off the purchase money mortgage rather than to Garcia and Kerusso. *See* BLACK's LAW DICTIONARY 1033 (8th ed.2004) (defining "purchase money mortgage" as "a mortgage that a buyer gives the seller, when the property is conveyed, to secure the unpaid balance of the purchase price.").

Petersen also testified at trial to his understanding of the 'refinance' terminology that Meridian, Garcia, and Kerusso used when they described the transaction to him. The transcript reads:

Q: In your experience as a lender, what is a refinance?

A: A refinance is where a new mortgage is being taken out to satisfy a prior mortgage on the property, and

sometimes the borrower gets money on top of that.

Q: Okay. So a couple of things are required[.] One is a mortgage[,] right?

A: Yeah, there has to be an existing mortgage.

Q: And does there have to be a payoff of that mortgage for a [refinance]?

A: Generally, yes. In fact, yes, at all times. I mean it's a [refinance].

Q: Now, what is just a finance?

A: [A] finance is obtaining a mortgage on a property.

Q: Okay. When there wouldn't be a prior mortgage?

A: That would be my understanding, yes.

Q: When you look at Exhibit 6, which is the closing statement, what do you see?

A: As far as?

Q: Is it a finance or a refinance?

A: It's a finance. There's no evidence of a loan being paid off.

(Tr. pp. 24–5).

From the language of Pilgrim's payoff letter and Petersen's testimony taken together, it is evident that Meridian did not adequately clarify the nature of Garcia and Kerusso's transactions. As a result, Petersen did not have all of the necessary information to make an informed decision regarding Pilgrim's rights to the proceeds, as the trial court stated in Finding 26, and the trial court's Findings 25 and 26 are not inconsistent. Accordingly, we conclude that the trial court's findings are not clearly erroneous because they support the trial court's conclusion that Meridian breached its duty towards Pilgrim.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err when it found that Meridian negligently disbursed net closing proceeds from a refinancing transaction.

Affirmed.

ROBB, C.J., and BROWN, J., concur.