430 P.2d 934

**ARIZONA TITLE INSURANCE & TRUST CO., a corporation, Appellant,**

v.

**REALTY INVESTMENT COMPANY, a corporation, Appellee.**

**No. I CA–CIV 441.**

Court of Appeals of Arizona.

Aug. 16, 1967.

Rehearing Denied Sept. 7, 1967.

Review Denied Oct. 24, 1967.

Johnson & Shaw, by J. P. Shaw, Phoenix, for appellant.

Christy, Kleinman, Hoyt & Fuller, by William G. Christy and Patrick E. Eldridge, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal by the Arizona Title Insurance and Trust Co. (referred to as Arizona Title or the title company) from a judgment requiring it to pay a "finder's fee" in connection with an escrow wherein certain loan proceeds were disbursed under a building loan agreement.

The basic facts are not in conflict. The appellee and plaintiff below, Realty Investment Company, was instrumental in obtaining a mortgage loan from the First Federal Savings and Loan Association for the Nevar Development Company (Nevar) which was used in the construction of certain apartment buildings. By agreement with Nevar plaintiff was to receive a brokerage or finder's fee of one percent of the amount of the loan.

Arizona Title was selected as the escrow agent to handle the transactions regarding the property upon which the apartments were to be built. There were actually three separate escrows. One involved the purchase of the property, one covered the mortgage loan and one was termed the builder's escrow. This appeal is concerned only with the escrow involving the loan.

The escrow involving the loan of $392,000 was accomplished by a building loan agreement and assignment, together with escrow instructions, dated December 28, 1962, executed by the owner (borrower), the contractor and the lender (First Federal). The title company was instructed by the owner and lender to disburse the net proceeds of the loan according to a schedule in the agreement of five draws to be made at different stages of construction. The agreement and escrow instructions also provided that Arizona Title was to use the fund solely for the purpose of paying materialmen and laborers on the project to the end that no liens would be outstanding to affect the mortgage. No mention of a fee or commission to be paid plaintiff was made in the escrow instructions. After the mortgage loan funds were placed in escrow, appellee presented a statement for "1% Brokerage Fee Now Due and Payable" to the borrower, Nevar, who approved and submitted it to the title company for payment. Upon receipt of the statement the title company insisted upon a different form of an assignment or letter of collection, which was done by a letter dated January 28, 1963. This letter was placed with the title company for payment during the time of the first draw.

It developed early that there were to be problems regarding the escrow, as the costs involved were more than the funds available from the loan. Plaintiff's payment was stalled for the next three months, the title company requiring different procedures from plaintiff. Plaintiff complied with these requests, anticipating payment each time. The title company finally advised plaintiff that it would not be paid in that there were insufficient funds. The funds became depleted before completion of the construction and a large deficit resulted. There had been payments other than for labor and materials, relating to such things as the purchase of the land, legal fees and costs. Plaintiff instituted this action against the title company and Nevar for the amount of the fee, and obtained a judgment against both. The title company appeals.

Appellant urges that the judgment is contrary to the evidence and the law. The issue raised is whether under the provisions of the escrow the title company was obligated to pay plaintiff's fee. The title company questions that plaintiff had a valid assignment from Nevar. Also, that Nevar did not have authority to execute any assignment because of a voting trust. It urges, however, that even if Nevar had an assignable interest, Arizona Title was not bound to pay plaintiff, the reason being that it must act in accordance with the escrow agreement under which the loan

proceeds could be used for only labor and materials until completion of construction; that since there were not sufficient funds to complete the construction, and since the fee was not covered in the escrow agreement, appellant was under no obligation to pay plaintiff.

Appellee, on the other hand, contends that Nevar, as mortgagor, had an assignable interest in the borrowed funds, and when Nevar directed the payment of the fee while funds were available, the title company was liable for not having paid; that if the escrow instructions were construed as prohibiting payment of bills except for labor and materials or construction costs that by custom and usage service fees for processing construction loans are treated as part of the construction costs.

Appellee also urges procedural objections that the defenses raised by appellants have not been affirmatively pleaded. These objections were not urged to the trial court or preserved at the time of trial. Therefore, we will not consider them. The rule demands that the question first be raised in the trial court before we will consider it on appeal. Milam v. Milam, 101 Ariz. 323, 419 P.2d 502 (1966).

We cannot agree with appellee's other contentions. In order to prevail, it must show an obligation on the part of the title company towards plaintiff. This it has failed to do.

The facts are undisputed as to the terms of the loan and escrow agreement. As escrow agent, the title company was a trustee of the funds and could act only in accordance with the escrow instructions set up by the borrower and lender who were the principals therein. The escrow agent must be guided in its duty by what the agreement says and act strictly in accordance with the escrow instructions. It must conduct entrusted affairs with scrupulous honesty, skill and diligence. 30A C.J.S. Escrows § 8, Malta v. Phoenix Title & Trust Co., 76 Ariz. 116, 259 P.2d 554 (1953); Higgins v. Kittleson, 1 Ariz. App. 244, 401 P.2d 412 (1965).

The escrow specifically instructed the title company as to how it was to disburse the funds. A unilateral agreement between the borrower and plaintiff could not change these instructions. As assignee, plaintiff stepped into the shoes of the assignor. Because of the deficit, assignor was not entitled to any funds. The fact that this deficit may have been contributed to by the expenditure of sums for items other than labor or materials does not alter the terms of the escrow agreement so as to create an obligation on the part of the title company to pay plaintiff. Neither does the mere depletion of the funds by payments, whether with authority or through negligence, with nothing more shown than the stalling of plaintiff, create a cause of action in plaintiff. The payment of a fee was not within the purview of the escrow.

Plaintiff has urged two other theories to support the judgment. First, that the fee should be considered as for work or labor within the meaning of the agreement and escrow. Secondly, that such fees are by custom and usage considered and treated as part of the costs of construction. Issues involving these theories do not appear to have been adequately formed or presented to the trial court. We, nevertheless, consider them and are unable to agree with plaintiff's contentions.

The provision regarding labor and materials was to insure the mortgage upon completion against such liens. Since plaintiff has not filed a lien for labor, we are not called to pass upon the propriety of such a filing or action. Neither are we called to pass upon the allied question as to whether this is an action for a real estate broker's fee governed by A.R.S. § 32–2101 et seq.

As to the question of custom and usage, we find no evidence to support such a theory. It is not one of which we would take judicial notice. A fact of which a court may take judicial notice must be indisputable. Phelps Dodge Corporation v. Ford, 68 Ariz. 190, 203 P.2d 633 (1949);

Bade v. Drachman, 4 Ariz.App. 55, 417 P.2d 689 (1966).

Reversed.

CAMERON, C. J., and STEVENS, J., concur.