598 P.2d 108

**Glen D. WEBSTER, Jr., d/b/a The Canal Tavern, Plaintiff-Appellee,**

v.

**USLIFE TITLE COMPANY of Arizona, an Arizona corporation, Garnishee-Defendant-Appellant.**

**No. 1 CA–CIV 4621–A.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 6, 1979.

Rehearings Denied June 26, 1979.

Review Denied July 20, 1979.

K. G. Flickinger, Jr., Phoenix, for plaintiff-appellee.

Jennings, Strouss & Salmon, by Riney B. Salmon, II, Neil Vincent Wake, Phoenix, for garnishee-defendant-appellant.

## OPINION

CONTRERAS, Judge.

This case presents the question of whether funds deposited in escrow by a buyer of real property which, under specific escrow instructions, are to be used in part to pay the seller's real estate broker for his commission may be garnished by a creditor of the seller where the garnishment takes place after the execution of escrow instructions. It is our opinion, based upon all the attendant facts and circumstances here presented, that such funds are not subject

to garnishment and, accordingly, we reverse the judgment entered in favor of the garnishor-creditor against the garnishee-defendant.

Plaintiff-appellee Glen D. Webster, Jr. d/b/a The Canal Tavern (hereinafter "Webster") filed a civil action on December 9, 1977, against David Alan Smith and Melinda Smith, his wife (hereinafter "Smith") to recover sums allegedly due and owing. In connection with the filing of that action and pursuant to A.R.S. §§ 12–1571 and 12–2401, *et. seq.*, Webster, on December 12, 1977, obtained a prejudgment writ of garnishment which was served on appellant USLIFE Title Company of Arizona (hereinafter "USLIFE Title") attempting to reach any indebtedness of USLIFE Title to Smith. Webster subsequently secured a default judgment against Smith. USLIFE Title, as garnishee-defendant, answered the writ of garnishment denying any indebtedness to Smith. Webster then filed a Tender of Issue in Garnishment controverting the answer of USLIFE Title and asserted that, at the time the writ was served, USLIFE Title held funds in the amount of $3,360 in a designated escrow, and that said sums were free from the claim of any lienholder or other secured creditor and were not the subject of any irrevocable assignment to third parties. The parties to the garnishment proceedings (Webster and USLIFE Title) filed a stipulated statement of facts and cross-motions for summary judgment. The superior court ruled that USLIFE Title had been indebted to Smith and granted summary judgment for Webster against USLIFE Title. This appeal by USLIFE Title followed.

The cross-motions for summary judgment by Webster and USLIFE Title were based upon the following stipulated facts:

1. On November 18, 1977, an escrow was established at a branch office of US-Life Title Company of Arizona (Escrow No. 59502–10) for the sale of Lot 166 Chateau Thierry wherein David Alan Smith was the seller and Vincent P. Farrell and Patricia C. Farrell were the buyers. A copy of such escrow instructions is attached hereto as Exhibit "A" and made a part hereof.

2. In connection with said escrow a preliminary title report was prepared by USLife Title, a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference.

3. Subsequent thereto, and on December 12, 1977, prior to the closing of the aforesaid escrow, a Writ of Garnishment issued out of the Superior Court of Maricopa County, Arizona, Cause No. C 360797, *Glen D. Webster, Jr., v. David Alan Smith,* and was served upon USLife Title Company of Arizona as garnishee-defendant.

4. Thereafter the garnishee-defendant filed its Answer to the Writ of Garnishment in which it alleged that it was not indebted to said David Alan Smith and further alleged that the aforesaid escrow was closed and all funds disbursed on December 27, 1977.

5. Attached hereto and incorporated herein by reference as Exhibit "C" is a true and correct copy of the Disclosure/Settlement Statement concerning said transaction.

6. After payment of all liens, encumbrances and other charges ordinarily incurred in a real estate transaction there remained in the hands of USLife Title the sum of Three Thousand Three Hundred Sixty Dollars ($3,360.00) which sum was paid to real estate brokers as commissions pursuant to the provisions of the escrow instructions (Exhibit "A").

As seen from the foregoing stipulated facts, USLIFE Title asserted in its Answer to the Writ of Garnishment that it was not indebted to Smith and further alleged in its Answer that the escrow concerning the sale of Smith's property had closed and that it had disbursed all funds on December 27, 1977. The Disclosure/Settlement Statement prepared by USLIFE Title which was attached as an exhibit to the Stipulated Statement of Facts states that the entire amount of funds received in escrow was consumed by disbursement for those matters ordinarily incident to a sale of real

property (i. e., encumbrances, prorations, title insurance premiums, escrow fees, etc.) including the payment of $3,360 for the real estate broker's commission.

Webster contended in the trial court and before this court that the funds paid by USLIFE Title to the real estate broker for its commission, albeit pursuant to previously executed escrow instructions, were funds owing to Smith (his debtor) and therefore subject to garnishment. The resolution of the question presented necessitates a review of the law regarding garnishment and the law relative to escrow transactions. It is a matter not easily resolved. A careful and thorough study of the cases cited by the parties along with this court's independent research discloses that there are no cases "on all fours" in this or other jurisdictions.

■ Turning first to the law of garnishment, it is well settled in Arizona that the rights of a garnishor-creditor to assets in the hands of a garnishee are no greater than rights of the defendant-debtor to those assets. *Mid-State Electric Supply Co. v. Arizona Title Insurance & Trust Co.*, 105 Ariz. 321, 464 P.2d 604 (1970); *O'Leary v. Superior Court of Gila County*, 104 Ariz. 308, 452 P.2d 101 (1969); *Ellery v. Cumming*, 40 Ariz. 512, 14 P.2d 709 (1932). These derivative rights, in essence, place the garnishor-creditor in the shoes of the debtor and if the debtor has no right to the funds sought to be garnished, then neither does the garnishor-creditor. It must therefore be determined whether Smith had any right to that portion of the funds in escrow which, under the express escrow instructions, were to be specifically utilized for payment of a broker's commission by the garnishee-escrow agent, USLIFE Title. This determination is dependent upon the legal resultant effect of the escrow instructions with specific reference to payment of a real estate broker's commission.

The escrow instructions concerning the sale of Smith's real property were signed by Smith and the purchasers on November 18, 1977. The material parts of the escrow instructions, as they relate to the payment of the broker's commission, provide:

From Seller's proceeds, pay BROKER'S commission of 7% of sales price as follows:

3½ to Century–21 Metro Realty (L) Harry Vaupell 938–3050

3½ to Stanton Realty Company (S) Barbara Martin 272–7105

and pay balance of proceeds to Seller: as herein stated above.

\* \* \* \* \* \*

23. If, under these instructions, a commission is to be paid to a real estate Agent, then, notwithstanding any conflicting provisions herein contained:

(a) The party obligated to pay the commission shall not acquiesce in any mutual cancellation of these instructions without having first delivered said real estate Agent's written consent to Escrow Agent *and Escrow Agent shall not recognize any cancellation without receipt of such written consent.* (Emphasis supplied).

It is appellant's position that funds deposited in joint escrow which the buyer and seller have jointly directed be paid to a third person [real estate brokers] are not subject to garnishment by general creditors of the seller. This position is based upon appellant's contentions that (1) the escrow alone insulates the broker's commission from garnishment by the seller's creditors, (2) a joint escrow of funds to pay broker's commissions on a sale of property is an equitable assignment of those funds, and (3) that paragraph 23 of the escrow instructions prohibiting the seller from cancelling or acquiescing in any mutual cancellation of escrow instructions without the written consent of the real estate agent constitutes an express and additional irrevocable assignment. Appellee, on the other hand, contends that funds deposited in escrow which have been "Assigned" to a third person are not subject to garnishment by creditors of persons other than the assignee, but mere [escrow] "Instructions" to the escrow agent to pay said funds to a third person do not exempt such funds from garnishment.

These opposing contentions necessitate a consideration of the formulated case law concerning payment of funds (including real estate commissions) by an escrow agent, along with the attendant duties and responsibilities of an escrow agent.

■ In the past, we have recognized that an escrow agent is a trustee of funds deposited in escrow and must be guided in its duty by what the escrow agreement says and act strictly in accordance with the escrow instructions. *Arizona Title Insurance & Trust Co. v. Realty Investment Co.*, 6 Ariz.App. 180, 430 P.2d 934 (1967); *Malta v. Phoenix Title & Trust Co.*, 76 Ariz. 116, 259 P.2d 554 (1953); *Higgins v. Kittleson*, 1 Ariz.App. 244, 401 P.2d 412 (1965). As succinctly stated in *Arizona Title Insurance & Trust Co., supra* :

> "As escrow agent, the title company was a trustee of the funds and could act only in accordance with the escrow instructions set up by the borrower and lender who were the principals therein. The escrow agent must be guided in its duty by what the agreement says and act strictly in accordance with the escrow instructions. It must conduct entrusted affairs with scrupulous honesty, skill and diligence. [citations omitted]." 6 Ariz. App. at 182, 430 P.2d at 936.

In the instant case, it is clear that appellee's debtor Smith, along with the buyer of Smith's real property, executed written escrow instructions whereby USLIFE Title, as escrow agent, was expressly and specifically instructed to pay the broker's 7% commission "From Seller's proceeds * * *" and after payment of such commission the escrow agent was to " * * * pay balance of proceeds to Seller * * *". It is likewise clear from the escrow instructions executed by the seller and buyer of the property that it was their individual and mutual intent that the broker's commission be paid from funds deposited with USLIFE Title and, after payment of such commission, any remaining balance was to be paid to the seller. In view of these express instructions, it was appellant USLIFE Title's duty and responsibility as escrow agent to pay

the broker's commission from the funds entrusted to it if funds deposited were sufficient to pay the broker's commission and provided that the funds were not subject to garnishment. Based upon the factual stipulation entered into by appellant and appellee in the trial court, it is evident that sufficient funds were placed with the escrow agent to pay not only the attendant liens and encumbrances on the real property, but also the broker's commission.

Notwithstanding the express instructions contained in the established escrow agreement, appellee strongly contends that the portion of the funds deposited with the escrow agent from which the broker's commission was to be paid are subject to the claims of any other of the seller's general creditors since they had not been "Assigned". Additionally, appellees contend that escrow instructions are not a contract but merely instructions for the parties under which the escrow agent must operate. *Young v. Bishop*, 88 Ariz. 140, 353 P.2d 1017 (1960); *Madsen v. Fisk*, 5 Ariz.App. 65, 423 P.2d 141 (1967).

In the instant case, and under the criteria set forth in *Young v. Bishop, supra*, the escrow instructions, as set forth by the buyer and seller, constituted a binding contract for the sale of real property since the instructions set forth the identity of the buyer and seller, the price to be paid, the time and manner of payment, and the property to be transferred. Therefore, and in accordance with *Young v. Bishop, supra*, and *Maricopa Realty & Trust Co. v. VRD Farms, Inc.*, 10 Ariz.App. 524, 460 P.2d 195 (1969), the real estate brokers involved in the sale of real property belonging to the defendant/debtor (Smith) had fully earned their commission on November 18, 1977, when the escrow instructions concerning the sale of the real property were signed by Smith and the buyers of the property. Not only had the real estate broker fully earned his commission as of November 18, 1977, but the execution of the escrow instructions on that date also constituted an irrevocable "equitable assignment" under Arizona law.

Although some of the textual authorities, by implication, reject the term "equitable assignment" as unnecessary in view of modern assignment practice and prefer the single word "assignment", Arizona has steadfastly recognized and adhered to the utilization of the term "equitable assignment" along with its attendant consequences. *United States Fidelity and Guaranty Co. v. Hanson,* 16 Ariz.App. 258, 492 P.2d 754 (1972); *Allen v. Hamman Lumber Co.,* 44 Ariz. 145, 34 P.2d 397 (1934); *Barnes v. Shattuck,* 13 Ariz. 338, 114 P. 952 (1911); *cf. Restatement of Contracts* §§ 148–177 (1932) and 4 Corbin, *Contracts,* §§ 856–922 (1963 and Supp. 1971).

 As pointed out by our supreme court in *Allen v. Hamman Lumber Co., supra,* and as subsequently followed by this court in *United States Fidelity and Guaranty Co. v. Hanson, supra,* any language which shows an intention of an owner of a chose in action to transfer it so that it will be the property of the transferee will amount to an equitable assignment if sustained by a sufficient consideration. In this case, the written escrow instructions signed by Smith manifested a clear, unequivocal intention on their part to transfer to the real estate broker a specified sum of money which they contemplated would be realized from the sale of the real property. The consideration for this transfer of funds was the services previously rendered by the real estate brokers who had fully earned the commission as of the date of execution of the escrow instructions. *See Allen v. Hamman Lumber Co., supra.* An equitable assignment was effectively created by the execution of the escrow instructions.

The irrevocability of the *equitable assignment* of funds to the real estate brokers is grounded on the provisions of paragraph 23(a) of the escrow instructions which not only prohibited Smith from acquiescing in any mutual cancellation of the instructions with respect to the payment of a real estate commission without the written consent of the real estate brokers but also imposed a duty upon the escrow agent to " * * * not recognize any cancellation without re-ceipt of such written consent." The total effect of this paragraph is to confirm in the broker an equitable assignment for the payment of his commission from specific funds deposited with the escrow agent and to protect the broker against *any* cancellation by the buyer, the seller, or the buyer and seller, regardless of whether *any* attempted cancellation was unilateral or mutual.

Admittedly, the word "irrevocable" is not used in the escrow instructions which we find constituted an equitable assignment; however, in our opinion, the use *per se* of the word "irrevocable" is not necessary since the resultant effect of the escrow instructions rendered the equitable assignment irrevocable. Accordingly, and under the attendant facts and circumstances as presented in this case, we are of the opinion that an irrevocable equitable assignment of funds took place upon execution of the escrow instructions on November 18, 1977, and that this assignment was prior in time and right to the Writ of Garnishment which was served upon USLIFE Title on December 12, 1977. Therefore, the funds to be utilized for payment of the broker's commission were not subject to garnishment. It must be noted that no claim was made by Webster that the sale of property by his debtor was a transfer to defraud creditors and we therefore express no opinion regarding a real estate transaction where such a claim is made.

We do hereby reverse the judgment entered by the trial court and remand this case with instructions to vacate the judgment previously entered, to grant appellant's cross-motion for summary judgment and to conduct such further proceedings as are consistent with this decision.

WREN, P. J., and DONOFRIO, J., concur.