**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JACOB BENSON, an individual; JOSEPH BENSON; DEBORAH BENSON, husband and wife; K. B., a minor, by and through Jacob Benson, guardian ad litem,<br><br>*Plaintiffs-Appellants*,<br><br>v.<br><br>CASA DE CAPRI ENTERPRISES, LLC, an Arizona limited liability company; UNKNOWN PARTIES, named as John Does 1–20; ABC CORPORATIONS I–X; XYZ PARTNERSHIPS I–X,<br>*Defendants-Appellees*,<br><br>CONTINUING CARE RISK RETENTION GROUP, INC., Garnishee,<br>*Real-Party-In-Interest-Appellee.* | No. 19-16686<br><br>D.C. No. 2:18-cv-00006-DWL<br><br>ORDER CERTIFYING QUESTIONS TO ARIZONA SUPREME COURT |

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Argued and Submitted October 5, 2020
Pasadena, California

Filed November 23, 2020

Before:  Andrew J. Kleinfeld, Andrew D. Hurwitz, and
Daniel A. Bress, Circuit Judges.

Order

## SUMMARY[*]

### Certification to Arizona Supreme Court

The panel certified to the Arizona Supreme Court the following questions:

1. In a garnishment action by a judgment creditor against the judgment debtor's insurer claiming that coverage is owed under an insurance policy, where the judgment creditor is not proceeding on an assignment of rights, can the insurer invoke the doctrine of direct benefits estoppel to bind the judgment creditor to the terms of the insurance contract?

2. If yes, does direct benefits estoppel also bind the judgment creditor to the arbitration clause contained in the insurance policy?

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

This case involves the potential application of Arizona's doctrine of direct benefits estoppel in a garnishment action brought by a judgment creditor against a judgment debtor's insurer.  The issues of Arizona law presented in this appeal are important and appear unresolved.  Pursuant to Arizona Revised Statutes ("A.R.S.") § 12-1861 and Arizona Supreme Court Rule 27, we respectfully certify two questions of law to the Arizona Supreme Court, as set forth in Part III below.  The answers to these questions "may be determinative of" this appeal, and it appears there is "no controlling precedent" in the decisions of the Arizona Supreme Court or the Arizona Court of Appeals.  A.R.S. § 12-1861.

I

Appellee Continuing Care Risk Retention Group ("CCRRG") provides liability insurance to skilled nursing facilities.  From January 2012 to August 2013, CCRRG insured Casa De Capri Enterprises ("Capri"), a skilled nursing facility, under a "Claims Paid" insurance policy that provided up to $1,000,000 in liability coverage.  The policy had an arbitration provision, which states:

> Any dispute or controversy arising under, out of, in connection with or in relation to this Policy shall be submitted to, and determined and settled by, arbitration in Sonoma County, California[.] . . . Any demand for arbitration by a CCRRG Member under this Policy must be made within twelve (12) months of any dispute arising out of this "Policy", including, but not limited to any denial by CCRRG of defense or reimbursement,

whether in whole or in part, of any "Claim" dispute or controversy that arises. . . .   The parties agree that any such award shall also be final and binding in a direct action against CCRRG by any judgment creditor of a CCRRG Member.[1]

On December 10, 2012, Appellants Jacob Benson and his family ("the Bensons") sued Capri in Maricopa County Superior Court, alleging negligence and abuse of Jacob. Jacob, a "vulnerable adult," *see* A.R.S. § 46-451(A)(10), was a resident at Casa De Capri.   Capri tendered the Bensons' claim to CCRRG, which provided a defense.  In August 2013, Capri filed a Chapter 11 bankruptcy petition, triggering an automatic stay of all litigation against it.  Capri then cancelled its insurance policy with CCRRG, effective August 1, 2013.   Citing the policy's terms, CCRRG then withdrew from its defense of the Bensons' claims and disclaimed any further coverage in the action.

Three years later, the Bensons obtained an order partially lifting the bankruptcy stay so that their action against Capri could proceed.   As part of this order, the Bensons also obtained an assignment of Capri's potential bad faith insurance claim against CCRRG. On December 1, 2017, the state court entered an approximately $1.5 million uncontested judgment in favor of the Bensons and against Capri.

---

[1] Capri and CCRRG also signed a Subscription Agreement containing a substantially similar arbitration provision.

After judgment entered, the Bensons filed a writ of garnishment against CCRRG, seeking to obtain from CCRRG the $1.5 million owed under the Bensons' judgment against Capri, plus interest. CCRRG removed the garnishment action to federal court based on diversity of citizenship, and then moved to compel arbitration under the insurance policy's arbitration clause. In response, the Bensons maintained that they could not be required to arbitrate because their garnishment action was not premised on an assignment of Capri's coverage claims under the CCRRG policy, and the Bensons themselves were not signatories to that policy. CCRRG maintained that the Bensons sought to avail themselves of the benefits of the CCRRG policy, and so should be bound by its terms— including the arbitration clause. CCRRG also disputes that it would owe any coverage to Capri because Capri cancelled its policy.

Applying Arizona law, the district court granted CCRRG's motion to compel arbitration and dismissed the action, holding that the Bensons, though non-signatories to the policy, were bound to its arbitration clause under Arizona's doctrine of direct benefits estoppel. The Bensons appealed.

## II

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs the arbitration clause. The FAA makes "written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009) (quoting 9 U.S.C. § 2). Generally, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Here, there is no apparent dispute that the arbitration clause, if applicable, covers the Bensons' claims.   Instead, the threshold question is "whether a particular *party*," the Bensons, are "bound by the arbitration agreement." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013).   To answer that question, we turn to "[t]raditional principles of state law," in this case, Arizona's.   *Id.* (quotations omitted).

Under Arizona law, "whether a nonparty is bound by a contract term is properly resolved by the Court as a matter of law." *JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*, 472 P.3d 526, 529 (Ariz. 2020) (quoting *Duenas v. Life Care Ctrs. of Am., Inc.*, 336 P.3d 763, 771 (Ariz. Ct. App. 2014) (alterations omitted)).   The Arizona Supreme Court recently explained that "theories available to bind non-signatories to the terms of a contract" include "incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary." *Id.* at 529–30 (citing, *inter alia*, *Duenas*, 336 P.3d at 772).

Relevant here is a variant of equitable estoppel, sometimes called "direct benefits estoppel," which the district court applied to bind the Bensons to the policy's arbitration clause.   Under Arizona's doctrine of direct benefits estoppel, a non-signatory may be bound to the terms of a contract when the non-signatory "(1) knowingly exploits the benefits of an agreement . . . , or (2) seeks to enforce terms of that agreement or asserts claims that must be determined by reference to the agreement." *Austin v. Austin*, 348 P.3d 897, 906 (Ariz. Ct. App. 2015).

In attempting to collect a judgment against the insured, Arizona law permits a non-signatory judgment creditor to use garnishment to litigate an insurer's obligations to the

judgment debtor under an insurance policy. *See Sandoval v. Chenoweth*, 428 P.2d 98, 102 (Ariz. 1967) ("[A]fter recovering a judgment against an insured under a liability policy, the injured third person may collect such judgment by instituting garnishment proceedings against the liability insurer."); *see also Holt v. Utica Mut. Ins. Co.*, 759 P.2d 623, 626 (Ariz. 1988); *Kepner v. W. Fire Ins. Co.*, 509 P.2d 222, 225 (Ariz. 1973) ("Such a testing of the insurer's liability may take the form of . . . proceedings on garnishment following the trial of the third party's action . . . .").

If Capri sought to litigate whether CCRRG was required to cover its losses under the insurance policy, it seems quite clear the arbitration clause would apply. The same would be true if the Bensons were assigned Capri's contractual rights under the policy. *See Farmers Ins. Exch. v. Udall*, 424 P.3d 420, 425 (Ariz. Ct. App. 2018) (rejecting argument that the assignee of an insured's post-loss policy claim is "allow[ed] . . . to pursue its claims unhampered by the policy's obligations"). But the Bensons maintain that Arizona's garnishment action is of a "special and limited nature," and emphasize that they are not proceeding under an assignment of Capri's rights to coverage under the insurance contract. Neither we nor the parties have located any Arizona cases applying direct benefits estoppel in a garnishment action brought by a judgment creditor against the judgment debtor's insurer, seeking to obtain amounts under the policy in satisfaction of the judgment.

In support of their position, the Bensons cite *Able Distributing Co. v. James Lampe, General Contractor*, 773 P.2d 504 (Ariz. Ct. App. 1989). In that case, the plaintiff, Able, obtained a default judgment against a subcontractor, Master Mechanical. *Id.* at 506. Able then served a writ of garnishment against the general contractor, Lampe, based on

a debt that Lampe owed to Master Mechanical under a contract to which Able was not a signatory. *Id.* The trial court determined that Lampe was indebted to Master Mechanical and entered judgment in favor of Able as judgment creditor. *Id.* at 507. On appeal, Lampe argued that its contract with Master Mechanical required all disputes to be settled through arbitration, and thus its liability to Master Mechanical could not be determined in a garnishment proceeding. *Id.* at 515.

The *Able* court rejected this argument, stating that "[p]arties to a contract which includes an arbitration clause cannot control the rights of a non-party garnishing creditor such as Able." *Id.* Although *Able* also relied on the fact that Lampe had unreasonably delayed pursuing arbitration, *id.*, the Bensons maintain that in a garnishment action, *Able* forecloses any attempt to bind a non-signatory judgment creditor to the terms of the judgment debtor's contract, at least absent a formal assignment of rights under the contract.

For its part, CCRRG contends that *Able* did not purport to announce a special rule for garnishment actions, but instead only a "general rule" that a contract normally does not bind non-signatories. That rule, CCRRG notes, is subject to recognized exceptions. This argument finds support in *Duenas*, where the court cited *Able* for the proposition that a party "is not bound to arbitrate disputes it has not specifically agreed to arbitrate," before noting that "[t]here are some exceptions to the general rule," such as equitable estoppel or third-party beneficiary theories. 336 P.3d at 772. In CCRRG's view, the form of the garnishment proceeding does not change the substance of this action—a dispute over insurance coverage under a contract—and thus the ordinary exceptions for binding non-signatories to the terms of a contract apply.

According to CCRRG, the district court correctly applied the doctrine of direct benefits estoppel, as articulated in *Austin*, 348 P.3d at 906, because the Bensons seek to exploit the benefits of the CCRRG policy by collecting its proceeds, and their claimed entitlement to those benefits must be determined by reference to the policy's terms, which set the conditions of coverage.

We are unsure whether to read *Able* as announcing a general rule, which is subject to the exceptions identified in *Duenas*, 336 P.3d at 772, or a special rule for garnishment actions, exempting judgment creditors from the *Duenas* exceptions. *See also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 260 (5th Cir. 2014) (noting a general "dearth of Arizona precedent" involving "arbitration-by-estoppel" theories); *United States v. Harkin Builders, Inc.*, 45 F.3d 830, 835 (4th Cir. 1995) (describing *Able* as "holding that [a] judgment creditor seeking under Arizona law to attach a contract interest by way of garnishment is not bound by [the] contract's arbitration clause").

In the absence of any apparent controlling precedent, and out of respect for Arizona courts and their preeminent role in interpreting Arizona law, we believe it "most suitable" to certify this issue to "the highest court of the state whose law is in question." *Fast Trak Inv. Co., LLC v. Sax*, 962 F.3d 455, 468 (9th Cir. 2020).

## III

We therefore certify the following questions to the Arizona Supreme Court:

> 1) In a garnishment action by a judgment creditor against the judgment debtor's

insurer claiming that coverage is owed under an insurance policy, where the judgment creditor is not proceeding on an assignment of rights, can the insurer invoke the doctrine of direct benefits estoppel to bind the judgment creditor to the terms of the insurance contract?

2) If yes, does direct benefits estoppel also bind the judgment creditor to the arbitration clause contained in the insurance policy?

We respectfully ask the Arizona Supreme Court to exercise its discretionary authority to accept certification under Ariz. Rev. Stat. § 12-1861. "Our phrasing of the questions should not restrict the Court's consideration of the issues involved. We acknowledge that the Court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." *Raynor v. United of Omaha Life Ins. Co.*, 858 F.3d 1268, 1273 (9th Cir. 2017) (quotations and alterations omitted). If the Arizona Supreme Court decides not to accept certification, we will resolve these questions based on our best understanding of Arizona law.

The Clerk will file a certified copy of this order with the Arizona Supreme Court under Arizona Supreme Court Rule 27. This appeal is withdrawn from submission and will be resubmitted following the conclusion of any proceedings in the Arizona Supreme Court. The Clerk is directed to administratively close this docket, pending further order. We retain jurisdiction over any further proceedings in this Court. The parties will notify the Clerk within one week after the Arizona Supreme Court accepts or rejects

certification and again within one week after an opinion is rendered.

## IV

Counsel for Appellants, the Bensons:

H. Michael Wright
David R. Schwartz
Udall Shumway, PLC
1138 North Alma School Road, Suite 101
Mesa, AZ 85201
(480) 461-5300

Steven S. Guy
The Guy Law Firm, PLLC
10105 E. Via Linda, Suite 103
Scottsdale, AZ 85258
(480) 767-3175

Counsel for Appellee CCRRG:

Steven G. Mesaros
Brian E. Cieniawski
Renaud Cook Drury Mesaros, PA
One North Central Avenue, Suite 900
Phoenix, AZ 85004
(602) 307-9900

Terri A. Sutton
Shauna Martin Ehlert
Cozen O'Connor
999 Third Avenue, Suite 1900
Seattle, WA 98104
(206) 340-1000

**IT IS SO ORDERED.**

/s/ Andrew D. Hurwitz

Andrew D. Hurwitz,
United States Circuit Judge, Presiding