NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ARIZONA HOME FORECLOSURE PREVENTION FUNDING

CORPORATION, et al., *Appellants*,

*v.*

MARICOPOLY LLC, *Appellee*.

No. 1 CA-CV 20-0254
FILED 3-23-2021

Appeal from the Superior Court in Maricopa County
No. CV2017-092698
The Honorable David J. Palmer, Judge

**VACATED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Valerie Love Marciano
*Counsel for Appellant Arizona Home Foreclosure Prevention Funding
Corporation*

Windtberg & Zdancewicz PLC, Tempe
By Marc Windtberg
*Counsel for Appellant Gerardo Macias*

Law Offices of Kyle A. Kinney PLLC, Scottsdale
By Kyle A. Kinney
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge David D. Weinzweig joined.

---

**B R O W N**, Judge:

¶1        Arizona Home Foreclosure Prevention Funding Corporation ("AZ Home") and Gerardo Macias challenge the superior court's judgment awarding excess proceeds from a judicial foreclosure sale to Maricopoly, LLC ("Maricopoly"). We vacate the judgment and remand for further proceedings because, even assuming a senior lienholder could properly claim the excess proceeds under A.R.S. § 33-727(B), Maricopoly did not establish it received an equitable assignment of any senior lien rights.

### BACKGROUND

¶2        Trails at Amber Ridge Homeowners Association (the "Association") sued to judicially foreclose on a home owned by Gerardo Macias for unpaid assessments. The complaint named Macias and two junior lienholders, AZ Home and Community Housing Resources of Arizona ("CHR"), as defendants. The complaint noted that Wells Fargo Bank, N.A. ("Wells Fargo") held "a valid first deed of trust pursuant to statute."

¶3        Both AZ Home and CHR stipulated that their liens were junior to the Association's lien. The Association obtained a default judgment against Macias, and Maricopoly purchased the property at a sheriff's sale for $77,100. The sheriff deposited $59,819.17 in excess proceeds with the clerk of the court after satisfying the Association's lien.

¶4        Approximately four months later, Maricopoly moved to intervene, asserting its interest would not be protected by Wells Fargo, which was not a party to the case, and thus the excess proceeds should be paid to Maricopoly. AZ Home applied for release of the excess proceeds, arguing its lien was "the first priority lien to receive Surplus Proceeds after the Sheriff's Sale." AZ Home also opposed Maricopoly's intervention request, contending the excess proceeds "are to be paid to subsequent lienholders . . . and ultimately—if any proceeds remain—then to Gerardo

Macias." Macias applied to receive whatever excess proceeds remained once AZ Home's lien was satisfied, but CHR did not make a request.

¶5 The superior court denied AZ Home's and Macias' applications and allowed Maricopoly to intervene, finding Maricopoly "has a title interest . . . subject to the Wells Fargo first position Deed of Trust" and "therefore has an interest in the disposition of the proceeds at issue that it paid to acquire." Citing A.R.S. § 33-727(B), the court also concluded "that excess proceeds remaining from this judicial foreclosure flow up, in this instance going to Wells Fargo."

¶6 Maricopoly filed an amended application a few months later, attaching the settlement statement from its July 2019 sale of the property to a third party and contending it was entitled to the excess proceeds because it had "acquired an equitable assignment by paying off the senior lien[] in full." Maricopoly also noted that Wells Fargo had previously assigned the senior lien to US Bank, N.A. ("US Bank"). After the superior court ordered the clerk of the court to release the excess funds to Maricopoly and entered a final judgment, AZ Home and Macias timely appealed.

## DISCUSSION

¶7 Homeowners' association liens "may be foreclosed in the same manner as a mortgage on real estate." A.R.S. § 33-1807(A). Generally, such liens have priority over other liens except for (1) liens recorded before recordation of the declaration, (2) a recorded first mortgage or deed of trust, and (3) real estate tax liens and other governmental assessments or charges. A.R.S. § 33-1807(B). The parties agree the lien previously held by Wells Fargo and US Bank has priority over the Association lien, but the AZ Home lien does not.

### A. Equitable Assignment

¶8 While the parties raise numerous issues on appeal, we need only address one: whether Maricopoly received an equitable assignment of the lien first held by Wells Fargo and then by US Bank. Generally, the parties' intent determines whether an equitable assignment has been made. *Morton v. Rogers*, 20 Ariz. App. 581, 586–87 (1973). "[A]ny language which shows an intention of an owner of a chose in action to transfer it so that it will be the property of the transferee will amount to an equitable assignment if sustained by a sufficient consideration." *Webster v. USLife Title Co.*, 123 Ariz. 130, 134 (App. 1979).

¶9        The only evidence Maricopoly offered to show it received an assignment was a settlement statement from its July 2019 sale of the property, which it contended shows US Bank "released its lien and gave Maricopoly all interests that it had in the Property by way of its senior lien." While the record indicates US Bank released the lien on or about August 12, 2019, the settlement statement says nothing about any alleged intent to assign the lien.

¶10       Maricopoly does not explain how US Bank could both release and assign the lien; it instead argues US Bank never objected to the Maricopoly's amended application.   But Maricopoly did not serve its amended application on US Bank and did not file it until seven days after US Bank released the senior lien.  As such, even if US Bank was aware of the application, it had no reason to object to it.  US Bank's inaction does not establish any intent to assign its senior lien rights, assuming without deciding those rights could still exist once the lien was released. *See Supplies for Indus., Inc. v. Christensen*, 135 Ariz. 107, 109 (App. 1983) (stating "the three requirements of an equitable assignment—intent to assign, intent to receive and valuable consideration"); *Morton*, 20 Ariz. App. at 585–86 (requiring "words or transactions which show an [i]ntention on the one side to assign and an intention on the other side to receive, if there is a valuable consideration" to create an equitable assignment).

¶11       Because the record does not support Maricopoly's contention that it received an equitable assignment of US Bank's senior lien rights, we vacate the superior court's order directing payment of the excess proceeds to Maricopoly and remand for further proceedings.  We need not reach the parties' contentions as to whether (1) A.R.S. § 33-727(B) applies to homeowners' association foreclosures, (2) a senior lienholder may receive excess proceeds in a homeowners' association foreclosure case under that statute, or (3) the court erred in denying AZ Home's request for a stay pending appeal.

## B.      Attorneys' Fees on Appeal

¶12       Maricopoly and Macias request their attorneys' fees incurred in this appeal under A.R.S. § 12-341.01(A), which permits a discretionary award to the successful party in an action arising out of a contract.  Macias contends this dispute arises out of the contract Maricopoly entered into to buy Macias' home at the sheriff's sale.  The parties to this appeal do not dispute Maricopoly's purchase; they dispute who is entitled to receive the excess proceeds from that purchase.  We therefore deny Macias' fee request. *See, e.g., Marcus v. Fox*, 150 Ariz. 333, 335 (1986) ("[A]ttorney's fees are not

appropriate based on the mere existence of a contract somewhere in the transaction").

¶13      Maricopoly contends it may recover attorneys' fees because Macias signed a contract "assigning any rights he may have to excess proceeds to Maricopoly." That contract is between Macias and Central Holdings LLC, and the superior court did not address it. Moreover, when a legal proceeding is based on a statute rather than a contract, like the case before us, "the peripheral involvement of a contract does not support the application of [§ 12-341.01(A)]." *Hanley v. Pearson*, 204 Ariz. 147, 151, ¶ 17 (App. 2003). And even assuming § 12-341.01(A) applies, we deny Maricopoly's request because it has not prevailed on appeal. As the successful parties on appeal, AZ Home and Macias are awarded taxable costs subject to their compliance with ARCAP 21.

## CONCLUSION

¶14      We vacate the superior court's order directing the clerk of the court to pay the excess proceeds to Maricopoly and remand for further proceedings. On remand, the court must order Maricopoly to return the excess proceeds to the clerk of the court.

