IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**JACOB BENSON, AN INDIVIDUAL; JOSEPH BENSON; DEBORAH BENSON,
HUSBAND AND WIFE; K.B., A MINOR, BY AND THROUGH JACOB BENSON,
GUARDIAN AD LITEM,**
*Plaintiffs/Appellants,*

*v.*

**CASA DE CAPRI ENTERPRISES, LLC, AN ARIZONA LIMITED LIABILITY
COMPANY; UNKNOWN PARTIES, NAMED AS JOHN DOES 1–20; ABC
CORPORATIONS I–X; XYZ PARTNERSHIPS I–X,**
*Defendants/Appellees,*

**CONTINUING CARE RISK RETENTION GROUP, INC., GARNISHEE,**
*Real Party in Interest/Appellee.*

No. CV-20-0331-CQ
Filed January 20, 2022

Appeal from the United States District Court for the District of Arizona
No. 2:18-cv-00006-DWL

Certified Questions from
the United States Court of Appeals for the Ninth Circuit
*Benson, et al. v. Casa de Capri Enters., LLC, Continuing Care Risk Retention
Grp., Inc.*, 980 F.3d 1328 (9th Cir. 2020)
**QUESTIONS ANSWERED**

COUNSEL:

H. Micheal Wright, David R. Schwartz (argued), Udall Shumway, PLC,
Mesa; Steven S. Guy, The Guy Law Firm, PLLC, Scottsdale, Attorneys for
Jacob Benson, Joseph Benson, Deborah Benson, and K.B.

Steven G. Mesaros, Brian E. Cieniawski, Renaud Cook Drury Mesaros, PA,
Phoenix; Terri A. Sutton (argued), Cozen O'Connor, Seattle, WA, Attorneys
for Continuing Care Risk Retention Group, Inc.

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, and MONTGOMERY joined.*

---

JUSTICE BEENE, Opinion of the Court:

¶1      The United States Court of Appeals for the Ninth Circuit certified the following questions to this Court: (1) In a garnishment action by a judgment creditor against the judgment debtor's insurer claiming that coverage is owed under an insurance policy, where the judgment creditor is not proceeding on an assignment of rights, can the insurer invoke the doctrine of direct benefits estoppel to bind the judgment creditor to the terms of the insurance contract?; and (2) If yes, does direct benefits estoppel also bind the judgment creditor to the arbitration clause contained in the insurance policy?

¶2      We answer the first question "no" and therefore do not reach the second question.  The common law doctrine of direct benefits estoppel cannot be invoked in a garnishment action to bind the judgment creditor to the terms of the contract because applying the doctrine in this context would contravene Arizona's statutory garnishment scheme.

## BACKGROUND

¶3      From January 2012 to August 2013, Continuing Care Risk Retention Group ("CCRRG") insured Casa de Capri Enterprises ("Capri"), a skilled nursing facility.  The insurance policy provided up to $1 million in liability coverage and contained an arbitration clause, which stated:

> Any dispute or controversy arising under, out of, in connection with or in relation to this Policy shall be submitted to, and determined and settled by, arbitration in Sonoma County, California . . . .  Any demand for arbitration by a CCRRG Member under this Policy must be made within twelve (12) months of any dispute arising out of this "Policy",

---

* Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this Opinion and did not take part in its drafting.

including, but not limited to any denial by CCRRG of defense or reimbursement, whether in whole or in part, of any "Claim" dispute or controversy that arises. . . . The parties agree that any such award shall also be final and binding in a direct action against CCRRG by any judgment creditor of a CCRRG Member.

**¶4**        Jacob Benson was a resident at Capri and is a "vulnerable adult." *See* A.R.S. § 46-451(A)(11). In December 2012, Jacob and his family ("the Bensons") sued Capri in Maricopa County Superior Court alleging negligence and abuse of Jacob. Capri sent the claim to CCRRG, which provided a defense. In August 2013, Capri filed a Chapter 11 bankruptcy petition, triggering an automatic stay of all litigation. Capri retroactively cancelled its insurance policy with CCRRG, effective August 1, 2013. CCRRG then discontinued defending Capri and disclaimed any further coverage.

**¶5**        Three years later, the Bensons obtained an order partially lifting the bankruptcy stay so they could pursue their action against Capri. As part of the order, the Bensons obtained an assignment of Capri's bad faith insurance claim against CCRRG. In December 2017, the trial court entered a $1.5 million uncontested judgment in favor of the Bensons and against Capri.

**¶6**        After the court entered judgment, the Bensons filed a writ of garnishment against CCRRG to collect the judgment. CCRRG removed the garnishment action to federal court and moved to compel arbitration under the policy's arbitration clause. CCRRG also disputed that it would owe any coverage to Capri because Capri cancelled the policy.

**¶7**        The United States District Court for the District of Arizona granted CCRRG's motion to compel arbitration and dismissed the action. The Bensons appealed to the Ninth Circuit, which certified the questions to this Court.

**¶8**        We have jurisdiction pursuant to article 6, section 5(6) of the Arizona Constitution and A.R.S. § 12-1861.

## DISCUSSION

**¶9**        The district court ruled that even though the Bensons were nonsignatories to the policy, they were bound to its arbitration clause under Arizona's doctrine of direct benefits estoppel.  The Bensons argue that because their garnishment action is not premised on an assignment of Capri's coverage claims under the CCRRG policy but is instead based on an assignment of Capri's bad-faith claim, they should not be bound by the arbitration clause in the contract that they did not sign.  They also argue that garnishment is a statutory remedy and is therefore not subject to private arbitration.  CCRRG contends that because the Bensons sought to avail themselves of the benefits of the CCRRG policy, they should be bound by the arbitration clause.  We review issues of law arising out of a contract and the interpretation of statutes de novo.  *JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*, 249 Ariz. 510, 513 ¶ 14 (2020); *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 194 ¶ 6 (2016).

## I.

**¶10**        Before addressing the questions certified to us by the Ninth Circuit, we examine the relationship between contractual arbitration clauses and the doctrine of direct benefits estoppel.

**¶11**        The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, governs the arbitration clause here, and makes "written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'"  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009) (quoting 9 U.S.C. § 2).  Nonparties to a contract are generally not bound by an arbitration agreement.  *See Dueñas v. Life Care Ctrs. of Am., Inc.*, 236 Ariz. 130, 139 ¶ 26 (App. 2014).  There are common law exceptions to this general rule, however, including direct benefits estoppel, which is at issue here.  *Id.* (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003)); *Austin v. Austin*, 237 Ariz. 201, 208–09 ¶ 23 (App. 2015).

**¶12**        Direct benefits estoppel specifies that "a nonsignatory may be compelled to arbitrate only when the nonsignatory (1) knowingly exploits the benefits of an agreement containing an arbitration clause, or (2) seeks to enforce terms of that agreement or asserts claims that must be determined

by reference to the agreement." *Austin*, 237 Ariz. at 210 ¶ 29 (citing *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012)); *see also Schoneberger v. Oelze*, 208 Ariz. 591, 594 ¶ 14 (App. 2004) ("In the arbitration context, a nonsignatory to an agreement requiring arbitration may be estopped, that is, barred, from avoiding arbitration if that party is claiming or has received direct benefits from the contract.").

## II.

**¶13** Next, we consider Arizona's garnishment statutes. Garnishment did not exist at the common law; it is not itself a cause of action or claim but is entirely a statutory remedy. *Kellin v. Lynch*, 247 Ariz. 393, 398 ¶ 18 (App. 2019); *see also* A.R.S. §§ 12-1570 to -1597. "Since garnishment is a creature of statute, garnishment proceedings are necessarily governed by the terms of those statutes . . . [and] courts may not allow garnishment proceedings to follow any course other than that charted by the legislature." *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 208 ¶ 16 (App. 2014) (quoting *Patrick v. Associated Drygoods Corp. (Goldwater's Div.)*, 20 Ariz. App. 6, 9 (1973)) (holding that because garnishment is a statutory cause of action, "a trial court must follow the manner in which the legislature has chosen for making [a] determination"); *see also Carey v. Soucy*, 245 Ariz. 547, 551 ¶ 15 (App. 2018) (explaining that courts narrowly construe the garnishment statutes and apply them exactly as the legislature prescribed).

**¶14** A garnishment proceeding is limited and moves on a statutorily expedited timeline and pursuant to prescribed detailed procedures. *See Davis v. Chilson*, 48 Ariz. 366, 369–70 (1936); A.R.S. §§ 12-1578.01, -1580. Importantly, the legislature provided that the "court, sitting without a jury, shall decide all issues of fact and law." § 12-1584(E); *see also* § 12-1584(A) ("[O]n application by the judgment creditor the court shall enter judgment on the writ . . . ."), § 12-1584(B) ("[T]he court, after hearing evidence and argument, shall determine whether the writ is valid against the judgment debtor, what amount is presently due and owing on the underlying judgment . . . and the court shall enter judgment . . . .").

## III.

**¶15** With these principles in mind, we now turn to the question before us. It is undisputed that insurance loss obligations can be garnished.

*See Sandoval v. Chenoweth*, 102 Ariz. 241, 245 (1967) ("It seems to be settled that after recovering a judgment against an insured under a liability policy, the injured third person may collect such judgment by instituting garnishment proceedings against the liability insurer."); *see also Kepner v. W. Fire Ins. Co.*, 109 Ariz. 329, 332 (1973) ("Such a testing of the insurer's liability may take the form of . . . proceedings on garnishment following the trial of the third party's action as in the instant case."); *Webster v. USLife Title Co.*, 123 Ariz. 130, 132 (App. 1979) ("These derivative rights, in essence, place the garnishor-creditor in the shoes of the debtor and if the debtor has no right to the funds sought to be garnished, then neither does the garnishor-creditor.").

¶16        The Ninth Circuit asks whether the doctrine of direct benefits estoppel can be applied in an Arizona garnishment proceeding as an exception to the general rule that nonparties are not bound by the terms of a contract. We hold it cannot.

¶17        Permitting the application of direct benefits estoppel in garnishment proceedings would contravene the legislature's directive that garnishment proceedings adhere to prescribed statutory procedures. This includes the statutory requirement that the trial court—not an arbitrator—resolve all factual and legal issues. The common law doctrine of direct benefits estoppel cannot be applied to supplant the legislative scheme for garnishment. Allowing the arbitration clause to control in a garnishment proceeding would undermine the legislature's intent that the trial court decide the issues of law and fact. Courts narrowly construe the garnishment statutes and apply them as prescribed by the legislature. *See Carey*, 245 Ariz. at 551 ¶ 15. A common law equitable doctrine cannot supersede the legislature's clear mandate regarding garnishment proceedings.

¶18        Additionally, courts in other jurisdictions have found that similarly worded garnishment provisions preclude arbitration entirely. *See, e.g.*, *Penford Prods. Co. v. C.J. Schneider Eng'g Co.*, 808 N.W.2d 443, 448 (Iowa Ct. App. 2011) ("While the garnishor 'stands in the shoes' of the judgment debtors, this is in the context of the issue presented in the garnishment proceedings. It does not extend to the arbitration clause in the agreement between [the two companies]. Further, the garnishment statute provides that this issue shall be decided by trial."); *see also United States v.*

*Harkins Builders, Inc.*, 45 F.3d 830, 833 (4th Cir. 1995) ("Under Virginia law, a garnishment proceeding is a separate proceeding in which the judgment creditor enforces the 'lien of his execution' against property or contractual rights of the judgment debtor which are in the hands of a third person . . . . [T]he judgment creditor does not 'step into the shoes' of the judgment debtor and become a party to the contract, but merely has the right to hold the garnishee liable for the value of that contract right.").

**¶19** However, if the debt is contested, as is the case here, the judgment creditor must prove that the insurer was obligated to insure the loss under the insurance agreement. This does not mean that the Bensons are bound by or effectively parties to the insurance contract, but rather they have standing to access the funds to the extent the original insured could have. The parties must necessarily refer to the insurance policy to determine the existence of a debt, but these issues must be resolved by a court. *See Kepner*, 109 Ariz. at 332 ("Such a testing of the insurer's liability may take the form of a declaratory judgment brought in advance of the third party's action or proceedings on garnishment following the trial of the third party's action as in the instant case.").

## CONCLUSION

**¶20** For the foregoing reasons, we answer the Ninth Circuit's first certified question as follows: In a garnishment proceeding, an insurer cannot invoke the doctrine of direct benefits estoppel to bind a judgment creditor to the terms of the insurance contract. Because the answer to the first question is no, we do not reach the second question.